**CONTINUATION OF APPLICATION FOR A SEARCH WARRANT**

I, Laurel Palk, being first duly sworn, depose and hereby state that:

**INTRODUCTION AND BACKGROUND**

1. I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been since July of 2025. I am currently assigned to the Detroit Field Division, Grand Rapids Field Office. I have been a police officer with the Kalamazoo Department of Public Safety (KDPS) for about 15 years. I am currently assigned as a detective with KDPS and have been since April of 2023. Specifically, I am assigned to the violent crimes unit. As part of my duties as a detective, I investigate a broad spectrum of crimes, including, but not limited to, homicides, robberies, felonious assaults, frauds, larcenies, burglaries, weapons violations and narcotics violations. Prior to becoming a detective, I was assigned as an investigator with the Kalamazoo Valley Enforcement Team (KVET) for about 6 years. The Kalamazoo Valley Enforcement Team is tasked with investigating narcotics trafficking and illegal weapons offenses.

2. During my time as a KVET Investigator, I participated in investigations of unlawful drug trafficking and, among other things, have conducted or participated in surveillance, the execution of search warrants, undercover narcotics purchases, debriefings of informants, handling informant purchases of narcotics, reviews of taped conversations and drug records, and have participated in investigations that included the interception of wire and electronic communications. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of narcotics proceeds, and the dialect, lingo and coded language used by narcotics traffickers.

3. The facts in this continuation come from my personal observations, my training and experience, and information obtained from other law enforcement officers, agents, and witnesses. This Continuation is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Because this Continuation is being submitted for the limited purposes described above, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe necessary to establish probable cause.

4.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following electronic devices (collectively, the "Subject Devices") and its contents:

   a.  **Subject Device 1:** a black iPhone, touchscreen style phone in a black hard case, located in Bernard Murff's possession during an operation to locate him and execute a search warrant at his residence.  This phone is currently held at the Kalamazoo Department of Public Safety in Kalamazoo, Michigan, in the Western District of Michigan.

   b.  **Subject Device 2:** a gray and black Vortex, touchscreen style phone without a case, located in Bernard Murff's possession during an operation to locate him and execute a search warrant at his residence.  This phone is currently held at the Kalamazoo Department of Public Safety in Kalamazoo, Michigan, in the Western District of Michigan.

5.  I submit that there is probable cause to believe that **Subject Device 1 and Subject Device 2** contain evidence of violations of federal law, specifically Bernard Murff Jr.'s possession with intent to distribute controlled substances, in violation of 21 U.S.C § 841(a)(1).

6.  The applied-for warrant would authorize the forensic examination of **Subject Device 1 and Subject Device 2** for the purpose of identifying electronically stored data particularly described in Attachment B. There is also probable cause to search the information described in Attachment A, the Subject Device, for evidence instrumentalities, contraband, and/or fruits of these crimes as further described in Attachment B.

## **PROBABLE CAUSE**

7.  On 07/05/2025 at approximately 0258 hours, officers with the Kalamazoo Department of Public Safety were dispatched to the area of 1225 West Paterson Street in the City of Kalamazoo on the report of shots fired.  Arriving officers located a large crowd in the parking lot and street and quickly observed a male being dragged across the parking lot toward the street.  The male being dragged was found to have a gunshot wound to the chest and officers provided medical aid on scene.  The male was identified as Leetrail Bible.  Bible was then transported to Bronson Hospital where he would later be pronounced dead.

8. Detectives with KDPS responded to investigate this homicide and Detective Greg Day was assigned as the lead detective.

9. Detective Day received a Silent Observer tip in reference to this incident.  The tip stated the main shooter and one responsible for Bible's death was "B-Hop aka Bernard Murff Jr."  Detective Day was familiar from prior police contact that "B-Hop" is Bernard Murff Jr. with a date of birth of XX/XX/1996.

10. In the following days of this investigation, Detective Day received four additional separate tips from different subjects that gave information stating Murff Jr. was a shooter during the incident.

11. At the time of the incident, Murff Jr. was known to Detective Day to be on federal supervised release from a prior KDPS gun case in which he was arrested.  Murff Jr. is a convicted felon and is barred from the possession of any firearms and/or ammunition.

12. On 07/23/2025, Detective Day conducted an operation to locate Murff Jr. and execute a signed search warrant on his known residence.  Murff Jr. was located leaving his known address in a vehicle and was contacted by officers.  During the contact, Murff Jr. was found to be in possession of a stolen .45 caliber handgun, multiple packages of commercially packaged marijuana, and an operational digital scale.  All of these items were located together inside the same backpack.  The digital scale appeared to have marijuana residue on it.

13. Specifically, Murff Jr. had in his possession approximately 27 packages of commercially packaged marijuana of various strains.  Each individual package contained 3.5 grams of marijuana.

14. Murff Jr. was arrested following the arrest operation/search warrant for being a felon in possession of a firearm.

15. Murff Jr. is currently pending federal charges relating to being a felon in possession of a firearm and has pleaded guilty to those charges.  Murff Jr. is currently contesting the fact that the firearm located in his possession was used in connection with dealing marijuana.

16. During the arrest, **Subject Device 1 and Subject Device 2** were located in the passenger seat of the vehicle where Murff Jr. was seated upon contact with officers.

17. **Subject Device 1 and Subject Device 2** were secured at KDPS HQ at the conclusion of the arrest and search warrant operation.

18. On 07/29/2025, KDPS obtained a search warrant to examine the contents of Subject Device 1 and Subject Device 2 for evidence of the shooting and the homicide.  The search warrants did not request authorization to search for evidence of drug trafficking.

**OFFICER TRAINING AND EXPERIENCE IN DRUG TRAFFICKING**

19. Based on my knowledge, training, experience and participation in drug investigations, I am aware of the following:

   a. Drug traffickers frequently use more than one cell phone to conduct their drug trafficking business.  For example, I have encountered drug dealers that use one cell phone/phone number to communicate with their suppliers, and a separate cell phone/phone number to communicate with their customers.

   b. Drug traffickers often keep names, aliases, and/or contact information of suppliers, purchasers, and others involved in drug trafficking in their devices.

   c. Drug traffickers sometimes use electronic messaging or messaging apps, in addition to MMS, SMS text messages, and voice call, to communicate with suppliers, purchasers, and others involved in drug trafficking on their devices.

   d. Drug traffickers often take pictures or videos of their drug trafficking associates, drugs, money, and/or firearms, which they store on their devices.

   e. Global Position System (GPS) data on phones may show the location of a drug trafficker at a given time, which may provide corroborating evidence of a drug delivery or other instances of drug trafficking.

   f. User attribution data and usernames, passwords, documents, and browsing history can provide evidence that the device is being used by a drug trafficker and can provide other useful evidence to the drug investigation; and

   g. Drug traffickers often use the internet to look up various information to support their drug trafficking activities.

   h. Cell phone users normally keep their cell phones on or near their person, within vehicles they are associated with, and within their residences.

   i. Drug traffickers commonly use cell phones to communicate with potential purchasers of narcotics to discuss the availability and price of, as well as coordinate a time for purchase. This communication is often done via text messaging, calls, emails, social media, etc.

   j.  Drug traffickers commonly use cell phones to conduct financial transactions including banking, electronic funds transfers, money transmissions through money transfer businesses to include Venmo, CashApp, Western Union, and MoneyGram.

**TECHNICAL TERMS**

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (also called a mobile telephone, cellular telephone, cell phone, or smart phone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone including successful and unsuccessful video call connections. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include GPS technology for determining the location of the device.

   b. Internet: Most cellular telephones and "smart devices" and have the ability to access and browse the internet and have features like a computer.  Smart devices have the capacity to add software applications for texting and social media.  The devices, like all computers, have memory capacity that will store data – both intended to be saved and data that is stored automatically by the device and software applications.

21. Based on my training, experience, and research, I know that **Subject Device 1 and Subject Device 2** have capabilities that allow the devices to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and /or internet browsing device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device and other evidence of criminal activity.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

21. Based on my knowledge, training, and experience, I know that electronic devices can store information, including internet searches and websites accessed, for long periods of time.  This information can sometimes be recovered with forensics tools.

22. *Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Subject Devices** were used, the purpose of that use, and the time of use.  Forensic evidence on a device can also indicate who has used or controlled the device and when. Forensic examination is necessary because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Subject Devices** consistent with the

warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **Subject Device 1 and Subject Device 2** described in Attachment A to seek the evidence of drug trafficking described in Attachment B.

26. Accordingly, I request that the Court issue the proposed search warrant described in Attachment A for items listed in Attachment B.